**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
UNITED STATES

-v.-                                       22-MJ-668
                                           Docket Number
JAMES ERIC COFFIE GONZALEZ
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff ___ Defendant ___ DOJ ✓
Name: AUSA Michael W. Gibaldi
Firm Name: ___
Address: U.S. Attorney's Office, EDNY
271A Cadman Plaza East, Brooklyn, NY 11201
Phone Number: (718) 254-6067
E-Mail Address: michael.gibaldi@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES ___ NO ✓
If yes, state description of document to be entered on docket sheet:
_____
_____

**A)** **If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered: ___
Judge/Magistrate Judge: ___
Date Entered: ___

**B)** **If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

ongoing criminal investigation; defendant at liberty

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED:  Brooklyn                , NEW YORK
        June 24, 2022

_____
**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE  June 24, 2022
                                    DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation: ___ ; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

_____
June 24, 2022              SIGNATURE
DATE

TH:MWG
F. #2020R00800/OCDETF#NY-NYE-0907

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

JAMES ERIC COFFIE GONZALEZ,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR AN ARREST WARRANT

Case No. 22-MJ-668

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

      JASON WHEELER, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

      In or about and between February 2022 and April 2022, within the Eastern District of New York and elsewhere, the defendant JAMES ERIC COFFIE GONZALEZ, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

      (Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with the FBI since approximately 2018. Before joining the FBI, I served as a Customs and Border Protection Officer with the United States Department of Homeland Security, United States Customs and Border Protection, for approximately three years, between in or about 2015 through in or about 2018. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and from reports of other law enforcement officers involved in the investigation.

2. The FBI has gathered information from, among other individuals, a cooperating witness ("CW-1"),[2] who has described the role of the defendant JAMES ERIC COFFIE GONZALEZ ("COFFIE") in the distribution of cocaine.

3. Beginning in or about February 2022, CW-1 met with COFFIE on several occasions in the Bronx, New York, and CW-1 recorded the meetings at the direction

---

[1] Because the purpose of this complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2] CW-1 has been cooperating with the government since approximately February 2021 in the hope that his/her cooperation would be considered by the government in deciding whether to charge CW-1 with crimes and whether CW-1 would be offered a cooperation agreement and for relocation and security assistance, including possible participation in the Witness Security Program. CW-1 has since pleaded guilty, pursuant to a cooperation agreement with the government, to offenses relating to loansharking, gambling, narcotics distribution, and the unlawful transfer of a firearm. CW-1's information has proven reliable. For instance, CW-1's information has been corroborated by, among other things, physical and electronic records, telephone records, consensual recordings, and physical surveillances.

of FBI agents.   During these conversations, COFFIE told CW-1 that COFFIE could sell large amounts of cocaine to CW-1, who claimed that he/she was looking for cocaine to resell.

        4.      For instance, in recorded conversation on or about February 25, 2022, which I have reviewed, CW-1 and COFFIE had the following conversation, in relevant part:

| | |
|---|---|
| CW-1: | Do you sell? |
| COFFIE: | Yeah. |
| CW-1: | A very good friend of mine was a big dealer . . . |
| COFFIE: | Okay. |
| CW-1: | Up in Yonkers. |
| COFFIE: | Okay. |
| CW-1: | Very good friend of mine.  I was fifteen, sixteen years old.  He got busted, right after I got hooked up with this guy. |
| COFFIE: | Okay. |
| CW-1: | But my friend borrowed money from this guy. |
| COFFIE: | [Unintelligible] |
| CW-1: | And every once in a while, he would pay my boss in 40 dollars' worth of coke, 20 dollars' worth of coke.  So, I do not know if that is something you would want to do. |
| COFFIE: | Yes, I do not . . .  Whatever you want. |
| CW-1: | It is up to you, cause I did not even know you were selling. |
| COFFIE: | Yeah, I am just waiting for something now. Usually when I got 25 or 26 thousand dollars, I go to Puerto Rico and buy a kilo and split it in half. I send two boxes.  And the thing is, the bullshit you get here, bro, compared to over there, over |

|  |  |
|---|---|
|  | there is pure.  Over here they are putting everything in. |
| CW-1: | Putting everything into it.  They're cutting it up. |
| COFFIE: | I am just waiting to finish the job that I am doing. |

. . .

|  |  |
|---|---|
| CW-1: | What are you getting a ki for down there? |
| COFFIE: | Down there? |
| CW-1: | Yeah. |
| COFFIE: | 28, 26. |

Based on my training, experience, and investigation of this case to date, including a debriefing of CW-1 following this recorded conversation, I believe that COFFIE was telling CW-1 that he could supply CW-1 with cocaine.  COFFIE further informed CW-1 that he usually purchases a kilogram of cocaine at a time in Puerto Rico, which he splits in half and then sends back to himself in New York.  COFFIE further informed CW-1 that he paid $26,000 to $28,000 per kilogram of cocaine in Puerto Rico ("28, 26").

5. On or about March 16, 2022, CW-1 and COFFIE had the following conversation, in relevant part, which I have reviewed:

|  |  |
|---|---|
| COFFIE: | Okay.  I am going to go over there.  I have already got, I have already called my nephew.  My nephew already placed the order.  They do not like doing, they do not like breaking bricks. |
| CW-1: | Gotcha. Now how much does a kilo cost then? |

. . .

|  |  |
|---|---|
| COFFIE: | Okay.  This is the way I work.  I charge four thousand dollars per kilo. |
| CW-1: | Okay. |

| | |
|---|---|
| COFFIE: | To get it.  It is a 50/50 chance that it gets here.  And they need to pay for my hotel and my, and my trip.  That is it.  But I am not doing none of that now because I want to open doors. |
| CW-1: | Yes, I got you. |
| COFFIE: | Okay. |
| CW-1: | What, say a month, say in a month, he comes to me and says, I want a ki.  How much is it going to cost? |
| COFFIE: | Right now? |
| CW-1: | Yeah. |
| COFFIE: | The ki's are twenty-eight. |
| CW-1: | Okay. |
| COFFIE: | It could vary from between twenty-eight.  It could go to thirty-two. |
| CW-1: | I got you. |
| COFFIE: | It all depends on how many people are getting, uh, how many. |
| CW-1: | Yes. |
| COFFIE: | How many are getting picked up by the FBI or whatever. |
| CW-1: | So say it is at twenty-eight. |
| COFFIE: | Let's say thirty. |
| CW-1: | Say thirty thousand. |
| COFFIE: | Alright.  So I need at least thirty-five, five.  In order for me to go. |
| CW-1: | That is how you are making your money.  Gotcha.  No problem.  How long now?  You are going down there when? |
| COFFIE: | Uh, um, I'm leaving to, uh, Friday morning. |

| | |
|---|---|
| CW-1: | And then you get back. |
| COFFIE: | I will be back Monday. |
| [Cross-talk] | |
| COFFIE: | It will be three days, and that will be here. |
| CW-1: | So within three days of when you get back.  So by next Thursday. |
| COFFIE: | Or maybe Wednesday. |
| CW-1: | Or maybe Wednesday. |
| COFFIE: | Or maybe before that.  Listen, I have sent packages that takes three days, and next -- One time I have sent a package over here. |

. . .

| | |
|---|---|
| COFFIE: | Listen, I got 280 kilos in Dominican Republic.  I can't do nothing with them. |
| CW-1: | You got 280?  Why are you not sending them up? |
| COFFIE: | I can't send, there is no USPS service from over there to here.  It is not like Puerto Rico. |
| CW-1: | Well can't you get it from the Dominican Republic to Puerto Rico.  Oh, shit.  That's a fortune man. |
| COFFIE: | And, listen to this.  The, the thing from the Dominican Republic is more pure than when it gets to Puerto Rico. |

. . .

| | |
|---|---|
| CW-1: | You gotta get that somehow up here.  You could make a fortune.  You could make a fucking fortune. |

Based on my training, experience, and investigation of this case to date, including a debriefing of CW-1 following this recorded conversation, I believe that COFFIE and CW-1

Case 1:22-mj-00668-CLP   Document 1   Filed 06/24/22   Page 8 of 12 PageID #: 8

7

were discussing COFFIE's process of purchasing one kilogram of cocaine in Puerto Rico and then shipping it back to New York, which COFFIE estimated has a fifty percent chance of arriving without incident ("a 50/50 chance that it gets here"). COFFIE stated that he had already ordered the cocaine through a relative in Puerto Rico ("I have already called my nephew. My nephew already placed the order."). COFFIE further explained that a kilogram of cocaine costs him between $28,000 and $30,000, and that he would charge $35,000 for the kilogram of cocaine ("I need at least thirty-five, five. In order for me to go."). COFFIE further stated that he intended to travel to Puerto Rico that Friday, i.e., March 18, 2022, where he planned to obtain a kilogram of cocaine and then ship it back to New York. Finally, toward the end of the conversation, COFFIE mentioned that he had 280 kilograms of cocaine in the Dominican Republic, but that he was unable to move it because, unlike Puerto Rico, he could not use the USPS to ship the cocaine ("I can't send, there is no USPS service from over there to here. It is not like Puerto Rico.").

6. According to records obtained from JetBlue Airways, on or about March 18, 2022, COFFIE boarded a flight from John F. Kennedy International Airport in Queens, New York to Luis Muñoz Marín International Airport in San Juan, Puerto Rico.

7. On or about March 28, 2022, the United States Postal Service ("USPS") intercepted a package ("Parcel 1") at a USPS mailing center in New York, New York. USPS intercepted Parcel 1 because it was addressed to COFFIE's address in the Bronx, which I know to be COFFIE's address based on my debriefings of CW-1.

8. On or about March 30, 2022, the Honorable Vera M. Scanlon, United States Magistrate Judge, Eastern District of New York, signed a warrant authorizing the search of the Parcel 1 for evidence, fruits, and instrumentalities of violations of Title 21,

United States Code, Sections 841 and 846.   The next day, other agents and I searched Parcel 1 and recovered a vacuum sealed package containing a substance resembling cocaine.

9.     On or about March 30, 2022, CW-1 met COFFIE, who told CW-1, in sum and substance, that he had shipped cocaine from Puerto Rico to New York in two separate parcels.   COFFIE then gave CW-1 the USPS receipts for those shipments, including the tracking numbers, which I have reviewed.   The receipts that COFFIE provided to the CW-1 show that the tracking numbers for the two packages are the tracking numbers for Parcel 1 and a second parcel ("Parcel 2"), respectively.

10.     On or about Mach 31, 2022, USPS intercepted Parcel 2 at a USPS mailing center in New York, New York.   Parcel 2 was addressed to the same address as the address on Parcel 1, which, as noted above, is COFFIE's home address.   It also bears the same tracking number as the tracking number that COFFIE gave to CW-1.

11.     On or about April 1, 2022, Judge Scanlon signed a warrant authorizing the search of the Parcel 2 for evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846.

12.     On or about April 4, 2022, other agents and I searched Parcel 2 and recovered a vacuum sealed package containing a substance resembling cocaine.

13.     The substances recovered from Parcel 1 and Parcel 2 were delivered to the New York City Police Department Laboratory for analysis.   Both substances tested positive for cocaine and weighed a combined total of approximately 247.26 grams.

14.     Video surveillance from USPS shows that the same individual dropped off both Parcel 1 and Parcel 2 at the same USPS post office in San Juan, Puerto Rico.   The individual dropped off Parcel 2 on or about March 22, 2022, and Parcel 1 on or about March

23, 2022. I have compared the individual in the video surveillance with photographs from law enforcement databases and believe that the individual in the video surveillance is a relative of COFFIE. I further believe that this individual may be the "nephew" in Puerto Rico that COFFIE referenced in recorded conversations with CW-1.

15. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant. The defendant is currently at liberty, and disclosure of the papers submitted in support of this application would give the defendant an opportunity to change patterns of behavior and flee from or evade prosecution, and would therefore have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant JAMES ERIC COFFIE GONZALEZ, so that he may be dealt with according to law.

*JKWheeler*
JASON WHEELER
Special Agent, Federal Bureau of Investigation

Sworn to before me this
24 day of June, 2022

*Cheryl L. Pollak*
THE HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America<br>v.<br>James Eric Coffie Gonzalez<br><br>*Defendant* | ) ) ) ) ) ) ) | Case No. 22-MJ-668 |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   James Eric Coffie Gonzalez                                                         ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to distribute and possess with intent to distribute one or more controlled substances
(Title 21, United States Code, Section 846)

Date: 06/24/2022

*Cheryl L. Pollak*
*Issuing officer's signature*

City and state:   Brooklyn, New York

Hon. Cheryl L. Pollak, U.S.M.J.
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: 

Known aliases: 

Last known residence: 

Prior addresses to which defendant/offender may still have ties: 

Last known employment: 

Last known telephone numbers: 

Place of birth: 

Date of birth: 

Social Security number: 

Height:                                          Weight: 

Sex:                                              Race: 

Hair:                                             Eyes: 

Scars, tattoos, other distinguishing marks: 

History of violence, weapons, drug use: 

Known family, friends, and other associates *(name, relation, address, phone number)*: 

FBI number: 

Complete description of auto: 

Investigative agency and address: 

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: 

Date of last contact with pretrial services or probation officer *(if applicable)*: